UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

L.C.M. (XXX-XX-9796)  　　　　　　　　CIVIL ACTION NO. 13-cv-0671

VERSUS  　　　　　　　　　　　　　　JUDGE STAGG

CAROLYN W. COLVIN  　　　　　　　　MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

L.C.M. ("Plaintiff"), born in 1962, has a high school education and past relevant work as a grocery clerk. She applied for disability benefits based on physical and mental impairments. ALJ Anne H. Pate conducted a hearing and issued a written decision that Plaintiff was not disabled within the meaning of the regulations. The Appeals Council denied a request for review, and Plaintiff filed this civil action to seek judicial relief under 42 U.S.C. § 405(g). For the reasons that follow, it is recommended the Commissioner's decision be reversed and the case be remanded for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 and described in cases such as Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). She found that Plaintiff had not engaged in substantial gainful activity (step one) between her onset date of February 6, 2010 and her date last insured of December 31, 2010. She found that Plaintiff suffered from hypertension, diabetes myelitis, and bipolar

disorder, which were severe (step two) within the meaning of the regulations but not so severe as to meet a listed impairment (step three) that would require a finding of disabled without regard to other vocational factors.

The ALJ then reviewed the medical records and testimony and decided that Plaintiff had the residual functional capacity ("RFC") to perform light work if it does not require close cooperation or interaction with co-workers or the general public, does not demand close attention to detailed or complicated instructions or job tasks, and has low stress and is not performed at a production rate pace. That did not allow Plaintiff to perform her past relevant work (step four), but a vocational expert identified other jobs available in the economy that Plaintiff could perform despite her limitations. The ALJ relied on that testimony to make a finding at step five that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff's treating psychiatrist completed a form that indicated Plaintiff had mental health limitations more severe than found in the RFC. Plaintiff argues on appeal that (1) the ALJ did not properly analyze and give deference to the treating psychiatrist's opinion and (2) did not properly evaluate Plaintiff's own credibility.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Facts**

Dr. Michael Pistorius began treating Plaintiff's mental health issues in April 2006. He wrote a letter in October 2006 that stated Plaintiff was "incapacitated from Bipolar disorder" and "unable to work." He added that he was attempting to stabilize her condition and did not know when she would be able to work. Tr. 320. He wrote again in February 2008 (two years before the period at issue) and described his efforts to treat Plaintiff with drugs such as Zoloft, Seroquel, and Depakote. He stated that Plaintiff "has been seeing a psychiatrist and is stabilized on her medicines." Dr. Pistorius noted that Plaintiff was "working some now" but unable to perform her usual job. He said that Plaintiff was primarily under the care of the psychiatrist so he did not see her much for bipolar disorder anymore. He continued to treat her for high blood pressure and diabetes but recommended seeing the psychiatric record for further details of the bipolar disorder. Tr. 319. The medical records show that Dr. Pistorius saw Plaintiff a number of times for matters ranging from bladder infection to back sores to coughs. He noted in records of some of those visits that Plaintiff had a normal mood and affect.

Plaintiff came under the care of Dr. Jasjit Singh, a psychiatrist, in July 2011 (a few months after the relevant period). Tr. 394. Her notes include observations that Plaintiff quit

working in 2006 because of difficulty dealing with people and inability to focus; suffered from depression for years and planned, but did not attempt, suicide; was hospitalized in 2007 for hallucinations; and once ran up $70,000 in bills due to impulsive shopping. Dr. Singh wrote that Plaintiff had poor short term memory, blunted affect, bipolar disorder, and a GAF of 55 (indicating moderate symptoms or difficulty in social, occupational, or school functioning). Tr. 214-16. Plaintiff was started on a new drug, Cymbalta, but she reported in an August 2011 visit that she noted no difference. Her dosage was increased. Tr. 217.

A few months later, in December 2011, Dr. Singh completed a Psychiatric/ Psychological Impairment Questionnaire in connection with the claim for benefits. She noted monthly treatment since July 2011 for a diagnosis of bipolar 1 disorder, mixed, severe with psychotic features, social anxiety disorder, and post-traumatic stress syndrome. She assessed a current GAF of 55, with 40 as the lowest within the past year (which would indicate major impairment in several areas such as work, school, or family relations). Dr. Singh was asked to identify clinical findings to support her diagnosis. She included mood disturbance, recurrent panic attacks, difficulty thinking or concentrating, hostility and irritability, manic syndrome, social withdrawal or isolation, and intrusive recollection of a traumatic experience. Plaintiff's primary symptoms were described as marked social isolation and mood instability. Dr. Singh stated that these limitations were reasonably consistent with Plaintiff's emotional impairments. Tr. 394-96.

Dr. Singh was asked to rate Plaintiff's degree of limitation in a number of areas on a scale ranging from no limitation to mild, moderate, or marked limitations. She opined that

Plaintiff was markedly limited in the ability to carry out detailed instruction; maintain attention and concentration for extended periods; perform within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others without being distracted by them; complete a normal work week without interruptions from psychologically based symptoms; interact appropriately with the general public and get along with co-workers or peers without distracting them; respond appropriately to changes in the work setting; and travel to unfamiliar places. She stated that Plaintiff's severe social anxiety and mood swings caused episodes of deterioration or decompensation in work settings that would cause her to withdraw or experience exacerbation of her symptoms. Dr. Singh stated that Plaintiff could not tolerate even "low stress" work at that time, but she thought that treatment over the long term should eventually make Plaintiff capable of tolerating low stress. Dr. Singh estimated that Plaintiff would be absent from work more than three times a month because of her impairments or treatment. Tr. 396-401.

Plaintiff testified that she began working part-time in October 2006 in a school kitchen where she worked five hours a day, two or three days a week. Her duties were to handle drinks and write the names on plates. Plaintiff said at the December hearing that in the last two months she had missed two days and come home early a couple of times because of stress and anxiety on the job. Tr. 38-40. She said that she stayed "pretty stable on the manic" since her medications were adjusted after a 2007 hospitalization when she had fantasies of hurting people with knives. She still experienced depressive episodes that

sometimes keep her in bed. Tr. 40-43. Plaintiff said that, due to of anxiety when she is in crowds, she no longer attended church or went out to eat. Tr. 45.

**Analysis**

Plaintiff points out that Dr. Singh's assessment is substantially more limited than what is reflected in the RFC found by the ALJ. She argues that the ALJ did not afford proper weight to the opinion of a treating physician. Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are not conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized are narrow. They include physician statements that are (1) brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) otherwise unsupported by the evidence. Scott, 770 F.2d at 485. The ALJ is generally "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

A special rule applies, however, when there is no competing first-hand medical opinion and the ALJ does not determine the treating physician's opinion is entitled to controlling weight. The ALJ may not discount the treater's opinion without conducting a full

Page 6 of 10

six-factor analysis required by 20 C.F.R. § 404.1527(c) (formerly found in subsection d). Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003). Those factors are: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination,(3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

The ALJ discussed the report from Dr. Singh and the records from Dr. Pistorius. She also considered Plaintiff's credibility but determined that the preponderance of the medical records indicate that during the adjudicative period (February to December 2010), Plaintiff's bipolar disorder "was stable on medications." The ALJ acknowledged Dr. Singh's indication of numerous marked limitations that would essentially preclude work, but she pointed to other evidence that suggests Plaintiff has been able to work in some capacity since 2008. The ALJ also referred to the "long-time treating physician" (Dr. Pistorius) as indicating that, since 2008, Plaintiff's bipolar symptoms have been stable. Dr. Singh's own records were cited as showing good control of manic symptoms and fair control of depression. Tr. 22-23.

The undersigned has rarely upset an ALJ's choice between competing medical opinions. In this case, however, the ALJ did not give adequate reasons to discount the detailed and specific findings of the treating specialist psychiatrist, Dr. Singh. The ALJ choice instead to give "great weight" to remarks by Dr. Pistorius, but Dr. Pistorius stated only that in February 2008 Plaintiff "is stabilized on her medicines" and seeing a psychiatrist.

He referred to the psychiatric record (of Dr. Singh) for details regarding bipolar disorder. His later notes from general healthcare visits include brief statements that Plaintiff had a normal mood and affect, but there is no indication Plaintiff was questioned, examined, or treated during those visits regarding her psychiatric state. The indication is to the contrary. Dr. Singh's detailed opinion was not brief or conclusory, it was supported by medically acceptable diagnostic techniques, and it was otherwise supported by the evidence.

One can pick and choose some anecdotal evidence that is not entirely consistent with Dr. Singh's opinion, and that will be true in every case, but there is neither a body of evidence or competing medical opinion sufficient to discount Dr. Singh's opinion to the extent done by the ALJ. On the other hand, the ALJ affords great weight to the "findings" of Dr. Pistorius, but there is no indication that he was treating Plaintiff for her mental health problems once Plaintiff began seeing the psychiatrist. In that sense, it is debatable whether there is any competing medical opinion at all on the psychiatric findings made by Dr. Singh. When there is no competing first-hand medical opinion, an ALJ may not discount a treating specialist's opinion without conducting a full six-factor analysis required by 20 C.F.R. § 404.1527. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003). The ALJ did not conduct such an analysis in this case. The attorney for the Commissioner attempts to conduct a similar analysis in the brief filed with the court, but "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton, 209 F.3d at 455.

It is perhaps possible that a proper Newton analysis could justify the same result, but the court may not conduct that analysis de novo and weigh the opinions of the physicians. The court may only determine whether the ALJ's assessment was in accordance with law and supported by substantial evidence. The undersigned finds that the assessment was not sufficient in this case to allow the decision to stand.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case be remanded to the Agency for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of April, 2014.

Mark L. Hornsby
U.S. Magistrate Judge